All righty. Hear ye, hear ye, hear ye. The Assembly of the Court of the 2nd Appellate District is back in session. Pursuant to adjournment, the Honorable Kathleen C. Rock is out. Thank you. Please be seated. Your Honor, this is the third case of the morning. Call 213-1312, St. Paul Fire & Marine Insurance. This is Jerry Donovan III. On behalf of both Hobbs, Daniel, and the rest, Mr. Michael W. Ratzit. On behalf of the Appellate, Mr. Dennis, and Ms. Goldberg. Thank you. Good morning, Mr. Ratzit. Good morning, Your Honor. My name is Michael Ratzit. I'm here on behalf of Jerry Hobbs along with Jennifer Turriello for the ICRMT. This, of course, is the declaratory judgment matter involving the question of what malicious prosecution means. Apparently, something that for 40 years has bedeviled the courts, the insurance companies, and the litigants, I guess. And we're going to resolve it definitively, right, in this case? I would hope so. I'm always a little bit reluctant to say that, but I think we have a case where everything kind of falls into line pretty clearly. Well, I have a question to start out with, since we've got a lot of questions on this case. If we look at the policy, and of course the courts have to look at the policies when they consider these matters, the law enforcement liability section defines personal injury, in pertinent part, as injury caused by any of the following wrongful acts, one of which is malicious prosecution. Correct. Now, doesn't this mean that the injury caused by malicious prosecution must occur during the policy period, not that the tort must be completed during the policy period? And that is going to be the stumbling block, I think, for everyone in this court. And I disagree, of course, because the policy says that we'll pay amounts legally required to pay as damages for covered injury. So legally required to pay implies, at least to me, we're talking about a tort. That's when you get legally required to pay for covered injury. That happens while the agreement is in effect. Injury means personal injury. Personal injury means injury caused by malicious prosecution. So if you substitute all those back up on top, you say they have to pay for damages for injury caused by malicious prosecution. With the essence of the tort of malicious prosecution. I'm sorry? With the essence of the tort of malicious prosecution in this case, or in any case. Exactly. And it has to happen while this agreement is in effect. Well, that means that if you substitute the words back, as I think your Honor is implying to me, if you put the words malicious prosecution, injury for malicious prosecution that happens while this agreement is in effect, we don't get a malicious prosecution. That's our simple point. We can't have a malicious prosecution until we have exoneration. Otherwise, that's not true. Why wouldn't the exoneration be the condition preceding to maintaining the claim? And the happening, the injury would be when the malicious prosecution happens, rather than when it's terminated. Because isn't the injury when somebody gets arrested and charged and thrown in jail and waits there and has to pose bond, isn't that the injury? How does the termination create an injury? Because in this particular case, and as far as I can tell, only in this particular case, we had a tort that even one of the courts said is odd. And to try and be specific in answering your questions, it can't be a prerequisite because malicious prosecution is made up of five elements. There's not a prerequisite for a tort. There can't be a prerequisite for a tort. You've got five elements for malicious prosecution, and one of them is exoneration. That is an element of the tort. That's the element of the tort, but is that when the injury happens? Yes. The injury happens when it's terminated? The prosecution's terminated? That's when the tort happens? That's when the, because of the very unique nature of malicious prosecution, that's when, I can't sue anybody until then. Mr. Resnick, let me ask you this question. Some police department arrests a guy, he's charged with murder, and he is incarcerated. They have insurance. In the meantime, their insurance lapses. They don't have it. Something happens. Somebody missed a payment. Sure. Okay, then a couple months later, the guy is exonerated. He's released from jail, and the prosecutor says to him, hey, we're going to be releasing this guy if we don't have enough evidence. And the insurance company says, oh, shoot, better go out and buy some insurance. So they go out and buy their insurance, and then two days later, this guy is exonerated. So now this new insurance company is stuck with paying the claim of malicious prosecution. That's fair? That's the premise. If that were the case, and it was your insurance company, do you think we'd see you in court arguing the other way? Not me. I'm going to take that side. That's an easy answer. No, that's the premise for the Erie decision from the Third Circuit is that people could manipulate the system. And my response to that, I think, is pretty easy. How are you going to manipulate a system? Let's assume that someone, Jack is the insurance officer for the city. How is that person going to manipulate the system in almost any circumstance I can think of other than possibly the one you're on or tendered to me? Because the insurance officer for the city doesn't know when the exoneration is going to occur. That person doesn't, he can't predict when exoneration is going to occur. He can't predict when the governor is going to pardon somebody. He can't predict when the jury is going to come back. He can't predict. But he let it lapse. He let it lapse. And then he learned, because the prosecutor is always going to go to the city or to whomever the police officer is and say, by the way, we're going to have to dismiss these charges. They're not going to just dismiss them and not tell them. So then they know. Actually, I would disagree. The prosecutor said we're going to dismiss the charges. He's not going to be telling anybody in the city. That insurance officer isn't going to. He's not going to tell the police? That insurance officer is not going to know that the prosecutor is planning to exonerate somebody tomorrow or the next day and run out and get the insurance. It could happen, but it's not going to happen. Let's assume that that is the case, though. You'd have to concede, would you not, that even though there's no Illinois court specifically that's addressed this issue, the majority of courts from other states that have addressed the issue have held that the commencement of the enlisted prosecution is the event that triggers the coverage, not the termination, not the exoneration, correct? That's the majority rule where the majority is 8 or 11 states. So why wouldn't we follow the majority rule? Because almost all of the cases either go back to the gist of the case and say, well, the conduct when I prosecute is the gist of the case, or they go back to Justice Shostak's question about, well, if we do it that way, we can manipulate the outcome. If the manipulation is going to be the basis for interpreting malicious prosecution to occur when the prosecution occurs, not when the exoneration occurs, that's basically sending a message that says, in the city, prosecutors are going to hold people in jail until there's insurance coverage. And it also is going to assume and race, and I think even Erie discussed this, if an insurance company is approached by a city and says, no, we don't have any insurance right now, we need to get some insurance, you're going to get a number of questions. And if you answer those questions wrong, when you in fact have knowledge that something's going to occur, you're going to lose your coverage. I will be on that side of that case. Because that can't happen. You just don't buy insurance out of a machine. Everybody knows you go into a company, and especially nowadays, and Erie and the ROESS of Florida case, and at least one other, have pointed out that the insurance companies ask you a lot of questions. They want to know about potential problems coming up. And in the hypothetical that I've been given, that insurance officer in that city knows about those things. If they tried to buy the insurance, it's going to be void. Well, we can talk about manipulations, we can talk about strategic maneuvers by people and by insurance companies, but what we have to get back is, where is the essence of the tort? The case law in the majority holds that damage flows immediately from the tortious act of filing a criminal complaint against somebody and holding them without the legal cost. That's the essence of a malicious prosecution. Is it not? No, I disagree. The essence of malicious prosecution is when I'm exonerated. Because until then, I have nothing. I have a bag full of sand. I can't do anything with it. I don't have anything. How do you have an injury when you're released from jail? I mean, when you're released from jail, you're like, I'm released, there's no injury there. And that starts the remediation at that point, does it not? Yes, it does. Judicial system's remediation. So that would be the point. That's when the law says I have the injury for the strange tort of malicious prosecution. That's what the Seventh Circuit said in American Safety. That's what the minority says. That's right. But to say the injury occurs when you're exonerated, that's a happy day for them. That's not when the injury happens. Your injury is because you're already in jail. You're not injured until you're exonerated. Until then, that's the hypothetical that was used in the underlying case. No, you can't maintain the cause of action, but you're still injured. I tell somebody in jail for five years they're not injured while they're in there without legal justification. Ask them if they've been injured. So long as they're in jail for valid grounds, they're not injured. I don't want to be there, but that's not an injury. An injury is something that I cause to you unjustly. But are they there on valid grounds if they're dismissed through malicious prosecution? I'm sorry, Mr. Freeman. Are they there on valid grounds if the case is subsequently nolliprossed for malicious prosecution? We don't know that, and Your Honor can anticipate my answer, until we get the exoneration. And we've been devoting a little bit of time to when I decide to prosecute you it's not that clear. I could be in jail take this case, for example. It may be the best example. If this underlying case had been tried a jury could decide that the confession wasn't coerced but that in fact the malicious prosecution occurred when the city received the DNA evidence and found out whatever he said wasn't true. We have to release him. So you're not looking at a specific point and that man wasn't injured. Let me just give you a sampling of some of the case law holdings and tell me how this jives with your position. The favorable termination of a malicious prosecution, which as you say is the injury, this court says marks the beginning of the judicial system's mediation of the wrong committed not the commencement of the injury or damage. It is difficult to see how the criminal defendant's release from prison can be described as an injury in any sense of the word. The favorable termination of prosecution is not an event that causes harm. That's correct. Obviously when I get out of jail my injury ceases to exist at that point. But nonetheless it's also the point where the tort is concluded. And the insurance companies this goes back to a little bit, is this policy clear? Is this so specifically clear in this case? American Safety said no. It goes back to the question of when I'm finally released from jail, now the tort exists. Insurance companies don't insure for injury. They insure for tort. Insuring for injury is called fault insurance. In this case the policy is in terms of injuries it didn't speak in terms of tort. The words of the policy are pretty clear. And that's all we have to construe. Speak of when injury quote unquote happens. That's correct. And the injury means the injury caused by malicious prosecution. And when does malicious prosecution occur? Only upon exoneration. But let me ask you, tell us succinctly maybe we should get right to the point Tell us very clearly and succinctly why we, in announcing our decision here should not follow the majority view. Tell us why we should not follow the majority view. Because the logic of the so called minority view of the 7th circuit I believe is better because it disposes of the gist argument which suggests that some one element of a tort is more than another and it disposes of the manipulation argument and it establishes a clear guideline and American Safety points out that this language is not clear. This language could be clear. All the language has to do is to put into this policy what this court is implying is there right now and that is that the policy focuses on the acts leading to the charge of malicious prosecution. Wouldn't you need an injury preceding the termination of the prosecution? I mean when would the cause of action accrue? And then I reduce to going back to pointing out what I think everybody would agree is that you have a very unusual tort here. That's what the 7th circuit said going back to them. He said normally the tort is done when you get the injury. This is the only case where the injury is not done until the tort doesn't exist until you get the exoneration. Normally an injury and tort. You don't have tort and injury here. You have injury and then tort down the road and it's only the tort. If I'm an insurance officer I won't be covered for the tort. But now the law enforcement liability section is worded differently though and isn't that instructive. That says of course we've been talking about the injury caused by malicious prosecution must happen while the agreement is in effect. Now if we look at the general liability section that says that the personal injury offense of malicious prosecution must be committed while this agreement is in effect. Isn't that instructive? Why do you think the language is different in the two sections? I have no answer for that. The personal offense is even vaguer than the language in the LAL coverage. That's in the PEGL coverage. That's right. I forgot what PEGL stands for. But that's a professional employee liability. It's even clearer but Do you think we should reach the same result regardless of whether the policy says the injury must happen during the policy period or that the offense must be committed during the policy period? Aren't there different occurrences that trigger the general liability section and this law enforcement liability section? Actually the same occurrence would trigger both sections. It just so happens that the PEGL coverage has an exclusion if the malicious prosecution is by police officers. If there was a malicious prosecution that was civil then the PEGL would apply. And the difference between personal offense and personal injury, when this policy defines personal injury as malicious prosecution I get circular and that's what the courts have done on it. There's been no tort here until this person was exonerated. If that's OK. You'll have time on rebuttal. Thank you. Mr. Dolan? Good afternoon Your Honor. It's Dennis Dolan on behalf of St. Paul Fire and Marine Insurance Company. And obviously the court has reviewed the briefs and is well versed in the issues based on the examination of the public counsel and I just want to address some of the issues that were raised just recently in the opening remarks. Counsel makes comment about the legal liability and the requirement in the insuring agreements that they're providing coverage for sums that are legally liable. And he's equating that with tort. But I think the court has rightly pointed out that the policies in the insuring agreement, and that's what we should be focusing on in the insurance coverage dispute is the policy language and what that requires. That requires the injury taking place during the policy period and it's very clearly stated in the LEO coverage as Your Honors were just discussing. The legal liability, the tort is not what is required by this policy to take place. There's no order in this policy that says we are providing coverage for the completed tort of malicious prosecution. Mr. Hobbs would like the policy to say that. I think they've argued that's what it says. But that's not what it says. The policy is focused on the injury. He's saying how does he maintain a cause of action because he can't maintain a viable cause of action until he's exonerated, correct? That is correct. And that is a precondition to him pursuing his malicious prosecution claim. But that doesn't mean that that's when the injury took place when exoneration took place. So we're talking about two different issues. And I think that's the distinction that the insuring agreements make between the injury and the legal liability. The tort, and the completed tort of malicious prosecution in this case provides the vehicle for them to recover for the injury. But it is the injury that the policy is providing coverage for. So it's not really relevant when the tort becomes complete or when the action becomes actionable when did the injury take place? Why shouldn't we adopt the seven circuits? Well, I think with the seven circuits and the other cases that adopt the minority view where they kind of lost focus is they focused on the tort. They didn't focus on the policy language in my view. Some of the decisions don't even really discuss the policy language at all. But they just talk in terms of the tort. And they say when is the tort complete? And they said the tort is not complete until there's an exoneration. So they just left to the conclusion well then that's when the appropriate trigger point is. And that's the policy that's going to be implicated is the policy at the time of exoneration. But they didn't focus on the policy language that's not what the policy language required and the policies were requiring the injury to take place during the policy and not to complete the tort. So I think the seventh circuit Eric focused exclusively on the elements of the tort and not on what the actual policy language was and what the policy required to take place during the policy period. Now if we hold that the commencement of this malicious or wrongful prosecution triggers coverage, won't insurance companies in Illinois be forced to take differing positions in state court and federal court then based on the decisions in the seventh circuit and the state? Thanks for your honor. I think that I know my client would be guided by the opinion of this court as the pronouncement of Illinois law. We've obviously disagreed with what they've said and how they've dealt with the issue. Our position is that we follow what the Illinois courts say on this issue and it wouldn't be guided by the seventh circuit and again for the reasons stated I believe the seventh circuit erred when they decided that the exoneration was the triggering event and not when the injury takes place. We did raise a number of other issues in the briefing public policy reasons that we believe would support the time of charging. Frankly I look at those issues as more of window dressing. I do believe they support the position and clearly indicate that there would be problems raised by adopting a time of exoneration. I don't really think you need to get to those issues. You look at the policy language and it's clear what is being required to happen during the policy in order to implement the coverage. So it doesn't matter that an insurance company might be facing a long tail on liability? The long tail issue that's an issue that insurance companies and courts have been dealing with for years in different contexts. They're going to continue to have to deal with those issues and it certainly is not a basis to override the policy language and to incorporate a condition or provision that's not required in the policy. So I would say that the long tail issue really is not something that's going to obviously override what the policy language requires. I think Your Honor's focused on this point earlier. There is no injury that's taking place at time of exoneration. That's when the injury ends. That's when the underlying defendant According to the majority's view. Correct. And logically too. That's when the defendant is being free. That's when the injury ends. Counsel raised in the brief A couple issues regarding ambiguity and reasonable expectations. I don't think that those issues were properly raised. They weren't below. I don't think they're properly supported here. Ambiguity The policy term is not ambiguous simply because people disagree about what it means and I think the case law is pretty clear on that. I think the language in the policy here is clear and it has been held so by the circuit court below and by many courts that have addressed the issue. Reasonable expectations doctrine I don't think that was properly raised below and there's some questions whether or not the reasonable expectations doctrine has any validity in Illinois but to the extent it does, it's clear it does not override the language of the policy and frankly the argument that they reasonably expected that they would have coverage at the time of exoneration rings a little hollow with me especially in light of the majority position out there that the time of the charging is the triggering point. Unless your honors have any questions for me I think I'll conclude. Well I think I just want to point out and see if you agree that there is some other different language too in the two sections that is the general liability section provides coverage for damages caused by a personal injury offense or the personal injury offense of malicious prosecution but the law enforcement liability section provides coverage for damages caused by the wrongful act of malicious prosecution is there a difference between saying the offense of malicious prosecution and the wrongful act of malicious prosecution? Frankly I don't think there's a meaningful difference between requiring the offense or the wrongful act I think either of those terms elicit the concept of something improper that's being done something wrongful some kind of wrongful conduct that is taking place the offense of malicious prosecution I think those terms indicate almost synonymous with wrongful act so I don't think there's a meaningful distinction between the language on that point. Thank you your honor. I appreciate your consideration and I see the request that the court affirm the circuit court's ruling granted so it should be. Thank you. Mr. Ressa your reply. Thank you. Mr. Ressa what is the standard agreement here? The question of law so it's de novo and I think everybody's agreed to that that's what I put in my agreement I don't think anybody's quarreled with that that's how all the cases are treated everyone is focused on the injury and I think in everybody's mind they're thinking of more like a physical injury this is a personal injury which is different than bodily injury and we're talking really here about a procedural injury the procedural injury which is being in jail doesn't end the procedural injury doesn't end until this person is let out of jail when they're exonerated. When does it begin? That's a question that is almost no matter how I answer it I can be proven wrong because I can see the wheels spinning and I know what you were about to say it's a good thing you didn't say it the problem is that the tort is so unusual and that's really the underpinnings of what we're trying to this tort is so unusual that I think you can have a good faith argument on both sides and I don't have any problem with that concept the problem is that when you're the insurance company you lose when there is a good faith argument you need to make your policy clear and they did not do that it would have been quite simple to make this policy clear that's what the 7th circuit pointed out in American Safety they pointed out that the language in that case talked about an occurrence and it didn't talk about the occurrence being the prosecution and that's the problem that you have here I respectfully believe the act occurred here when there was exoneration because that's the tort and we all know the tort didn't happen until the day of exoneration if the court is going to write an opinion that says otherwise it's going to have municipalities digging back in time in these cases looking for problems that may or may not exist some of these cases are 20, 25 years old before these poor people are let out of jail and if you're going to balance that against something that could have been clearly taken care of I think the burden falls on the care you're making today unless the court has further questions from you thank you for your attention thank you counsel for your arguments at this time the court will take the matter under advisement and render a decision on due course we stand in brief recess until the next case thank you